On behalf of the Adelante, Christopher McCoy, on behalf of the Adelantes, to Joel Nunez. Good morning, Mr. McCoy. May it please the Court, Counsel. This case involves two issues today. First, whether the prosecution's evidence, independent of the defendant's statements, was sufficient to satisfy the corporate selective rule. And second, whether the trial court's failure to admonish the potential jurors pursuant to Supreme Court Rule 431B constituted plain error under the closely balanced evidence problem. Turning to the first issue, in the normal DUI case, there's usually no problem proving the element of driving. The police officer will observe the vehicle and it will be obvious that the defendant was the driver. But as evident by the cases cited in our brief and opposing counsel's brief, in more than a few cases, the police officer does not see who was driving the vehicle. Now, this does not automatically require reversal, as evident in a few cases. But there is one important fact that distinguishes this case from almost every other case where there has been a corporate selective challenge to the driving element. And that fact is that the defendant was not found alone. She was one of four people who were at this gas station that evening. And that is directly opposed to the cases cited by opposing counsel in which the defendant was found alone, near, or in the vehicle. All right, so you're saying there were other people that ostensibly could have been driving the vehicle because there was knowledge that they were all riding together. Yes, Your Honor. Then there was the police officer who testified. Somebody asked one of the officers who was driving and there was silence, correct? Yes. And then the state sought to and did admit that at trial. There was an objection in hearsay grounds, right? Yes. And the trial court admitted that for purposes of impeachment? Or what was the ostensible reason it was overruled? The prosecutor at trial said that it was admitted to show if anyone had made a statement or that basically that no one had made a statement. Our contention is that that is basically proof of the substantive value. That is proof that the defendant was the driver. Now, if that wasn't the purpose for which it was admitted and was only admitted for some sort of impeachment, then it does not help the prosecution in this corpus delecti calculation. It doesn't support the fact or corroborate the fact that the defendant was driving. And, again, with corpus delecti, there needs to be independent evidence of every element. And the element is that the defendant was driving. So our first contention relating to that specific fact is that it did not prove anything. Why? Because it was hearsay? Or why didn't it prove anything? Well, first, because it simply didn't make the prosecution's theory any more probable than the defendant's theory. Of course, the defendant's theory was that the defendant's sister, Yamilee, was the actual driver. The defendant agreed to take the fall for her because her sister did not have a valid driver's license. And so if the defendant had agreed to take the blame, then you wouldn't expect these other people to contradict her right when the police are there and to step up and say something. Moreover, the fact of silence itself is just not a very strong form of proof. Well, as I'm reading this, I don't know. I'm reading this that the trial judge allowed it on the grounds that it was not being offered for the truth of the matter asserted, but simply to demonstrate whether anyone made a statement. So it was not admitted as substantive evidence, and, therefore, that can't be cooperative. Do you agree with that? It's out of the equation. Yes, Your Honor. I agree with that. If it's admitted to impeach somebody or admitted for other purposes other than substantive evidence, that cannot be cooperative. What about the turning over of the keys? Well, Your Honor… Is that a cooperation of driving? No, it's not. And because the only evidence of the keys comes from Yamilee's testimony, the defendant's sister's testimony, in which she says she had the keys at the gas station. When the police officers arrived, she – the defendant asked her to give her the keys. And so Yamilee hands the keys to the defendant, and then the defendant immediately hands them over to the police officer. So the testimony is that the defendant originally did not have the keys. And so because of that, it actually hurts the defendant's statement rather than corroborating the defendant's statement, and so it's not independent evidence that she was driving. Now, did the police officers testify at all about the keys, or we just have the sister's testimony? You just have the sister's testimony. And was her testimony consistent with the fact that she handed the keys to the defendant and the defendant handed the keys to the officers in the presence of the officers? All this happened at the same time? It's a little unclear what the officers saw. Suffice to say, it seems – the time frame isn't completely established. It seems to be fairly close. From the record, we don't know if the officer actually saw the first handing over the keys or not. But it was done at the gas station in any event? Am I just clear? That is what her testimony is. We're talking – I mean, corroboration doesn't have to prove the case beyond a reasonable doubt. It just has to be some independent corroboration of the statement, correct? That's correct. It needs to do more than merely suggest that a crime has occurred. It needs to provide, again, corroboration and to strengthen the defendant's statement. Let me ask you this hypothetical. If the officer in this case had testified that I asked who drove and the defendant said I drove, and then the defendant handed me the keys to that vehicle, do you believe that would be enough corroboration? I don't believe that would be enough because, again, we're way away from the scene. It's not – they're not directly by the vehicle. They're about two blocks away. We don't know exactly how long ago the accident occurred. It seems to be within the last half hour. You would agree that is some independent corroboration? It would be some corroboration. I don't believe that that in and of itself would quite be enough given the circumstances that we have here. No, but, again, you're talking about the circumstances, and that brings us into a weighing process. And we're talking about sufficiency of the evidence here, whether any rational trial of fact could have found this. So I don't know how much weighing we're supposed to be doing about Yamali's testimony and how much was believed or believable or – I don't believe that it's weighing. I believe it's does this do more than just suggest that the defendant was the driver. And in this particular situation, it's arguable either way. We don't have that fact here. But I believe – my contention is that that alone would not be enough given the timeframe and the distance with which we're talking here. Would that act – I'm sorry. Would that act of handing the keys, though, that came – that would come from the defendant. Would that still be just part of her statement even though – could you say that that's a verbal act? Or is that really separate corroboration? I mean, isn't corroboration usually from something perhaps outside of what's coming from the defendant? Yes, and I would think that – I would say that the handing the keys would not be the defendant's statement. Sort of the counter-example we have here, opposing counsel raises the issue of defendant owning the car. Now, that only comes – proof of that only comes from the defendant's mouth, what she says to the officer. So our contention at that point is that it is not independent corroboration, the sort of ownership of the vehicle. There's no proof of title or anything. Right, but so you agree with Justice Burke on the keys, then? I agree it would constitute independent evidence. I don't believe it's enough independent evidence to reach the court. But the nature of it you think is independent? Yes, Your Honor. Okay. Although in this case, there was an explanation for the turning over the keys. It wasn't simply that the police arrived, the defendant's alone, and she turns over the keys. Yes, yes. Again, the explanation is that the defendant has agreed to take the blame for this, and in so doing she takes – And there was an explanation for the turning over the keys in that context. Yes. And so it is different than simply the police officer just saying that the keys were handed over. Can a jury believe part of Yamali's testimony and disbelieve other parts? I mean, is a jury free to do that? A jury is free to do that. So why can't the jury believe Yamali's testimony that the defendant had the keys when the police officers arrived and disbelieve how the keys got in her possession that Yamali gave to her? I mean, is it incumbent upon the jury to believe all aspects of this, or can the jury simply believe that this part? This part I believe. I believe, Yamali, when she says that when the police came, the defendant said I was driving and handed the keys to her. Well, again, we're dealing with facts that appear to be fairly close in time, and there's no other contradicting evidence to say where these keys came from or that the defendant had them for more time. So in that case, I don't think a jury can simply just take one half of her sentence and then totally disregard the other half of the sentence when there's really no reason not. If one is to believe, there's no reason not to believe the other part of her statement. So in this case, I don't think that they can just completely reject her uncontradicted testimony that she had the keys when they arrived at the police or at the gas station, rather. Well, they did reject her testimony that she was driving. Yes, and in finding her defendant guilty, they did not believe Yamali's testimony. And so what we really have here is a case where there's simply nothing that makes the defendant any more likely than any of the other three people to be driving. Again, the other cases cited by opposing counsel in which the conviction was affirmed, the fact that there's no one else at the scene creates an inference that the defendant was the driver. If the defendant in those cases, like Lurz and Jenderowski, in those cases, if the defendant's not the driver, then where is it? Where is the driver? Here, there's four people. They were four people in the same car. So that normal sort of implication and suggestion is not present in that case. And that's what really distinguishes this case. And, in fact, in my research, I've only found one case where the defendant was not alone, and that's Pukliki Foster. And in Foster, the conviction was reversed. And that is what should be done in this case as well. And if there's no further questions on that, turning to the second issue, the alternative in this case should be remanded for a new trial for the court's failure to give 431B admonishments. There's no dispute that the court did not admonish the potential jurors or let alone ask if they understood and accepted the 431B principles. So this issue really comes down to whether the evidence was closely balanced. And there's three things I would like to point out today for why it was closely balanced on this issue. And all of these three reasons sort of tie back in to the purposes of Rule 431. Now, first, as we've just got done talking about, the real only evidence of the defendant's driving was her statement. So on one hand, we have the defendant's statement at the scene. On the other hand, we have Yamlee's testimony at trial. So it's up to the jury to decide between those, but it's essential that the jury understands the framework within which they're making this decision. And it's not a level playing field. It's not a preponderance of the evidence. It's proof beyond a reasonable doubt. And so they needed to understand this in order to properly weigh the evidence. Now, the second reason this evidence was closely balanced was because at trial the prosecutor misstated the burden of proof on multiple occasions. And perhaps the best example of this is when he said, quote, so I guess it comes down to this. To find the defendant not guilty, you would have to believe the testimony of Yamlee. Now, this is not the correct statement. The standard isn't which side is more believable. Again, it's proof beyond a reasonable doubt. And so the jurors who were selected needed to understand what the correct burden was. You didn't raise a burden-shifting claim here, did you? Not an independent claim, just as a reason why the 431B admonishments were closely balanced. Weren't the instructions, though, appropriate? And didn't they give the jury the correct burden of proof and, in essence, the Zare principles? Yes, Your Honor. However, Zare itself has said that the purpose of jury instructions is different than the purpose of these variety of questions. And, in fact, Zare held that if a juror was selected who was prejudiced and who did not accept these 431B principles, then these post-trial instructions would not affect and would be of no avail. And, in fact, it appears that even with the instructions, the jurors were confused. And that gets me to my third reason, which is they sent a note to the judge during deliberations which said, quote, does the prosecution have to prove she was driving or is her admission sufficient? And so clearly the jury was not sure about what the burden of proof was. And it seems like perhaps they thought there was some presumption just from her statement that she had been proven guilty as to that element. And the judge's answer to simply keep deliberating did not clear up this confusion in any way. So under Thompson, does the failure to comply with 431B automatically reversal in every case? No, Your Honor. And, in fact, Thompson precludes the second prong of plain error, the fundamental rights. So we're just challenging it on the closely balanced evidence, which cases subsequent to Thompson have held that it can be plain error under that prong. And these three reasons have shown the lack of 431B admonishments, had ramifications throughout the trial, and threatened to tip the balance against the defendant. So they were a plain error. And for these reasons, we would ask that this court reverse Ms. Sanchez Robles' conviction or alternatively remain this case for a new trial. Thank you. Thank you. You'll have time on rebuttal. Mr. Giggs? First of all, Your Honor, I think there's a difference we have to make sure between the proof of trial, which of course is beyond a reasonable doubt that the defendant was driving. Of course, we recognize that burden and we accept it. But the question of corpus delicti is a different kind. It requires a very low standard of evidence. It's really only some independent corroborating evidence, which must only tend to confirm the admission and the confession. We believe that the presence of the defendant's own vehicle disabled at the side of the road, two blocks away from where she's located, is itself corpus. Do you agree that the only evidence that it was her vehicle came from her mouth? Yeah, I do agree with that. But it was not part of her admission. It was done later at the police station. It's a totally independent statement. It's not a statement as to her admission of guilt or admission of driving. It was an independent statement to a really collateral effect in the case. So we can take a defendant's statement and pile it on top of each other for corroboration as long as it doesn't involve the same subject matter? Well, I mean, I believe that it was independent. The question is whether it's corroborating evidence that corroborates her admission. I think this is a statement that's independent of her admission, and I think, therefore, the fact that it's her vehicle does corroborate it. But isn't that an uncorroborated extrajudicial admission? I mean, again, we're talking about it still stemming from what she's saying. And that's what violates a conviction cannot be based solely on uncorroborated extrajudicial confessions or admissions, correct? Well, the corpus can't be. The corpus, yes. But we believe that there were, in addition, there were other factors that I think that were corroborating to the fact that she was driving. It's uncontested that she was the one that handed the keys to the police officer. Now, I grant you that Yomali said that she had handed them first to the defendant, but that's consistent with our theory of a recent fabrication of all of Yomali's statement. That's really just an effort to show why it was the defendant handed them to the police officer. But what is uncontested is that it was the defendant that handed the keys to the police officer. The defendant agreed to take field sobriety tests, agreed to take a breathalyzer, all consistent with someone that was driving, not someone that wasn't. She's never recanted her testimony, never. And the fact that the other girls didn't respond to the inquiry when they were asked. Officer Holden shows up at the White Inn less than a half an hour after this vehicle was found on the side of the road. And he walks in and he says, who was driving? And the defendant raises his hand and says, I was driving. It's my car. And the other three don't say anything. I think that is corroborative to them. It's not hearsay. They have argued in their brief that it's hearsay, but I don't see it. That's what I was sort of parsing words with opposing counsel. If the silence is not hearsay, and I believe I'm looking at the trial judge admitted the silence of the companions, not for the truth, correct? For some other purpose. Well, I know he sustained and he overruled their objection. So I don't know that he ruled on why he admitted it. Well, if he didn't admit it as substantive evidence that it couldn't, how could it be corroborative evidence? If it was admitted for some other purpose other than substantive evidence, how could that corroborate the defendant's admission? Impeachment wouldn't corroborate an admission, would it? Well, Your Honor, I think when you ask four people who was driving and one says yes and three don't say anything, I think that that, I mean, there's an inference to be drawn from that. And that inference would corroborate the defendant's admission. The inference being what? That the person that admitted was the one driving and the three that were not saying anything were not the ones driving or they would have said they were driving. So the silence would be assertive conduct on behalf of the other three people? Well, I guess I would say it's lack of assertive conduct. It's non-conduct, but I think that it is legitimate to draw inferences from non-conduct without it being considered hearsay. If it's not assertive, it's not relevant. If it's assertive, then it's relevant, but it may violate hearsay. Well, again, what we're talking here is not proof you have a reason about it. We're not at the trial, so we're really talking about a corpus delicti issue. And I think we're pretty familiar with the facts of the law, not the corpus issue, but what about this 431B? The trial judge gave no zero admonishments at all, correct? Correct. Isn't that a problem? It's a problem, Judge, but because there was no objection to it, it must be heard under the plain error doctrine. And it doesn't exist? There's no plain error here? Well, I don't think that the evidence was so closely balanced that that in itself was what tipped the scales against the defendant. This case was, in my opinion, not closely balanced at all. Again, the defendant admitted three times that she was the driver of the vehicle. Again, getting past the corpus part, at trial, in terms of the evidence, the defendant admitted three times that she was the driver. She admitted it once on camera at the police station. The jury had an opportunity to view her demeanor, to see that there was no signs of coercion, no signs of deception. Certainly at the police station, again, if we're talking about proof now, beyond a reasonable doubt not the corpus delicti, it was she admitted that it was her car at that time. She had the keys in her possession at the time. And again, she agreed to take all the tests that the officer proposed to her. But there was also an explanation. Yamali clearly testified that she was driving and the defendant wasn't. Doesn't that make a little bit of a close case? Judge Yamali's testimony, even the defense agrees, was confused and filled with inconsistencies. That's a quote from their brief. I would categorize it as bizarre. At one time, the defense attorney said to her, well, look down at the white hand that night. Was there a judge out there wearing a robe that asked you to raise your hand and swear to tell the truth, and the whole truth and nothing but the truth? And she said yes. But she was suggesting there was an on-duty judge station at the gas station in Lake County, is that correct? Correct. So we should totally disbelieve her testimony that the defendant had the car keys when the police officers arrived. Well, Judge, we think that's consistent with a recent fabrication. I think that it was clear that she had the car keys. She didn't know whether the police officers, the police officers did not testify to that. But Yamali knew that her sister had the car keys, so I think that her statement was, as you suggested before, half true. She suggested that she gave them to the defendant as an explanation for why the defendant had them. But it was clear that the defendant, in fact, did have them. The cases that the defense has cited, principally Naylor, they're a confrontation of two different stories where there was no independent evidence at all, only just the testimonies of the police officers versus the testimony of the defendant. There they found that it was closely divided. But we don't have that here. In fact, what we really have here is sort of no prosecution. It's really the defense's version of the story at the time versus the defense's version of the story at the trial. It's really kind of a defense story versus defense story, which is inherently, I think, suspect to recent fabrication. And I'd point out that the Naylor case, too, did have three dissenting opinions, and they refused to draw a bright-line rule that any case, whether it was just opposing testimony, was sufficient to make the case closely divided. I don't think this case, the evidence, was closely balanced at all. The jury didn't think so either. The note from the jury, I don't know what can be inferred from a note from the jury. We don't know whether it was from all the jury, from one member of the jury. It didn't seem to question the veracity of the two witnesses. It was a question of law and whether an admission was sufficient alone, and the judge, I think, rightfully refused to answer that. But I don't think that there's any particular inference or negative inference or positive inference, one way or the other, that can be drawn from the note from the jury. Well, I mean, doesn't that really indicate they were confused as to the burden of proof, notwithstanding the instructions? I think, Judge, Your Honor, I don't know that it was burden of proof so much as whether an admission alone, whether that was sufficient, and one single question as to that I don't know that I can infer that it's the whole burden of proof, that that shifted the whole burden of proof in any way. But she did admit it three times, as I say, once on tape, and the jury had the opportunity to view her testimony and her statement to the police at the police department, see that it was done without coercion and apparently with no deception, and they had an opportunity to hear Eulalia's testimony, and Eulalia's testimony was just clearly a fabrication. Thank you. Mr. McCoy? As to the issue of whether or not the evidence was closely balanced, it's important to note that this is not the same standard as a reasonable doubt challenge. The evidence doesn't have to be taken to the light most favorable to the prosecution. It's a lower burden. And here it was not unreasonable to think that the only sober person in the car was the designated driver that evening, and not unreasonable to believe that story. And, in fact, as Justice Zinoff pointed out, the jury note that was sent went to the exact issue that these 431B principles of questions would have gone to, and so the evidence was closely balanced on that issue. Turning to a moment for the – to the first issue, opposing counsel argued that the defendant never changed her statement and that the defendant made a – her second statement could sort of be bootstrapped to confirm her first statement in terms of who was owning the car. However, this would simply turn the corpus electi rule on its head and be able to say that what the defendant's statement didn't say corroborates what the defendant's statement did say, and that's simply not why we have the corpus electi rule. The corpus electi rule is in place because there is a mistrust of extrajudicial confessions, and so independent evidence is needed. And because of that, the defendant saying that she owned the car and the defendant never saying that she wasn't the driver do not corroborate her statement. And if you look at the facts of this case, the only chance the defendant would have had to change her statement before the trial was when she was at the police station. But when she was at the police station, her sister was also – she wasn't being arrested, but she was in the lobby waiting for her. So if the defendant had changed her statement there, this would have gone against what she'd been trying to do, which is to protect her sister. So, again, what the defendant said or didn't say really doesn't and can't provide independent evidence of corroborating her statement. And for these reasons, again, Ms. Sanchez-Ruiz respectfully asks that this court reverse her conviction or alternatively remand the case for the trial. Thank you. Thank you. Thank you very much, counsel. The court will take the matter under advisement and render a decision in due course.